UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORAZON AMEDO CAPANGPANGAN,<br><br>         Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No. EDCV 13-2243 JC<br><br>MEMORANDUM OPINION<br><br>[DOCKET NOS. 17, 18] |

## I.   SUMMARY

On December 16, 2013, plaintiff Corazon Amedo Capangpangan ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; December 18, 2013 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 17, 2010, plaintiff filed an application for Disability Insurance Benefits.  (Administrative Record ("AR") 12, 158).  Plaintiff asserted that she became disabled on March 15, 2009, due to diabetes, hypertension, and depression.  (AR 166).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 3, 2012 (AR 27-66).

On August 31, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 12-22).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  history of bilateral carpal tunnel syndrome, degenerative disc disease of the back, diabetes mellitus, and coronary artery disease (AR 14-16); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 16-17); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 17); (4) plaintiff could perform her past relevant work as a routine office clerk and administrative clerk (AR 21-22); and (5) plaintiff's allegations regarding her limitations were not

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[2]The ALJ determined that plaintiff:  (i) could occasionally perform postural activities; (ii) could not climb ladders, ropes or scaffolds; (iii) could not forcefully grip, grasp, or twist with her bilateral upper extremities; (iv) could frequently do fine or gross manipulation, bilaterally; and (v) needed to avoid unprotected heights and/or dangerous machinery.  (AR 17).

credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 18).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

  (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

  Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ Did Not Materially Err in Considering the Medical Evidence

Plaintiff essentially contends that a reversal or remand is warranted because the ALJ failed properly to consider the record evidence of plaintiff's bilateral carpal tunnel syndrome, degenerative cervical spinal disc disease, and diabetic peripheral neuropathy.  (Plaintiff's Motion at 3-12).  The Court disagrees.

With respect to plaintiff's "history of bilateral carpal tunnel syndrome," the ALJ thoroughly considered the medical evidence regarding such impairment and found that clinical testing on December 11, 2007 (*i.e.*, the electromyogram ("EMG") and Nerve Conduction Study ("NCV study")) reflected that plaintiff had "carpal tunnel syndrome, bilaterally."  (AR 19) (citing Exhibit 1F at 12 [AR 243]; 4F at 4 [AR 291]; 15F at 3 [AR 370]).  The ALJ noted, however, that after the 2007 EMG and NCV study plaintiff "did not follow up in regards to [her] carpal tunnel syndrome."[3]  (AR 19).  For example, the record does reflect, as plaintiff notes (Plaintiff's Motion at 5), that on February 21, 2008 plaintiff complained of "tingling numbness" and "burning pain" in both of her hands, an examination showed plaintiff had "paresthesia . . . and weakness" in her bilateral upper extremities, plaintiff was diagnosed with carpal tunnel syndrome, and she was

---

[3]To the extent, as plaintiff contends (Plaintiff's Motion at 10), the foregoing statement arguably "misstate[d] the medical evidence," any error was harmless since substantial evidence supported the ALJ's core finding – *i.e.*, that the nominal effort plaintiff made to obtain treatment for her carpal tunnel syndrome was inconsistent with plaintiff's claim that she suffered disabling symptoms from such impairment.

prescribed Neurontin (apparently for pain).[4]  (AR 360).  However, the same treatment record also noted that plaintiff had "[not been] taking anything" for her carpal tunnel pain.  (AR 360).  Moreover, the record reflects that plaintiff did not seek treatment for carpal tunnel syndrome thereafter until April 20, 2011 – *i.e.*, over three years after the EMG/NCV study, more than two years after plaintiff's alleged onset date, and more than seven months after plaintiff filed her application for Social Security benefits.  (AR 362-63).  Even assuming, for the sake of argument, that plaintiff continued to take Neurontin after it was prescribed in 2008, it was reasonable for the ALJ to conclude that plaintiff's failure to seek any other treatment until 2011 suggested that plaintiff's carpal tunnel syndrome pain "was not as severe as alleged" by plaintiff.  (AR 19); cf. Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [Supplemental Security Income] benefits.") (citations omitted).

In addition, the ALJ found plaintiff's "history of carpal tunnel syndrome"[5] to be a severe impairment, and accounted for the impairment in his residual functional capacity assessment for plaintiff.  (AR 17, 20-21).  Substantial evidence supported the ALJ's findings.  Specifically, as the ALJ noted, in connection with

---

[4] See Neurontin, Drugs.com, available at http://www.drugs.com/neurontin.html ("Neurontin [] is an anti-epileptic medication, also called an anticonvulsant.  It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. . . .  Neurontin is also used in adults to treat nerve pain caused by herpes virus or shingles . . . [and] may also be used for [other off-label] purposes . . . .").

[5] Plaintiff essentially asserts that the ALJ mischaracterized her impairment as "history" of bilateral carpal tunnel syndrome, noting that "[plaintiff] clearly has ongoing carpal tunnel syndrome and there is nothing historical about it." (Plaintiff's Motion at 10).  The Court finds any error in this respect harmless, however, since plaintiff points to no limitations (and the Court finds none) that were omitted from the ALJ's residual functional capacity assessment as a result of any such error.

an October 4, 2011 comprehensive Neurological Evaluation, a consultative neurologist examined plaintiff and found no sensory or motor weakness in plaintiff's bilateral upper extremities and markedly decreased grip strength bilaterally, but opined that plaintiff had "no hand use impairment" and "no fine fingering manipulation impairment." (AR 19) (citing Exhibit 11F at 5 [AR 341]). The ALJ nonetheless gave plaintiff the "benefit of the doubt," and included limitations in his residual functional capacity assessment related to plaintiff's bilateral upper extremities (*i.e.*, no forceful gripping, grasping or twisting, only "frequent" fine or gross manipulation) (AR 17, 20-21). The opinions of the consultative examining neurologist were supported by the physician's independent examination of plaintiff (AR 339-41), and thus, without more, constituted substantial evidence supporting the ALJ's findings. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

      As for plaintiff's degenerative cervical spine disease, the ALJ considered at length the medical evidence of the impairment which reflected, in pertinent part, that plaintiff had disc bulging and foraminal encroachment in parts of her cervical spine, together with myalgia of the leg and "bony sclerosis" of the left shoulder. (AR 20) (citing Exhibits 1F at 20 [AR 251]; 12F at 3 [AR 344], 15F at 4, 10-12 [AR 371, 377-79]). In addition, a consultative neurologist examined plaintiff and noted several abnormal findings related to plaintiff's spine impairment (*i.e.*, positive straight leg raising test; Patrick's Test on left radiating to low hip; tenderness over thoracic spine with scoliosis convex to the right and right shoulder higher than left with associated tenderness; "slight tenderness to palpation" in spots on the thoracic spine, lumbar spine, left sacroiliac joint, and left hip joint; "hint" of myotomal weakness at L5-S1 myotomes; "hint" of decrease in pinprick on left L5-S1 dermatomes; slight weakness in walking and "hint" of decrease in

heel/toe walking on the left lower extremity). (AR 20) (citing Exhibit 11F at 4 [AR 340]). As the ALJ noted, however, the examining neurologist also observed that plaintiff did not require an assistive device to ambulate, and the neurological examination showed normal motor strength, sensation, and reflexes. (AR 20) (citing Exhibit 11F at 4 [AR 340]). The ALJ found degenerative disc disease of the back to be a severe impairment, and accounted in plaintiff's residual functional capacity assessment for limitations related to the impairment by limiting plaintiff to, among other things, jobs requiring only light work, occasional postural activities, and no climbing. (AR 14, 17).

As for diabetes mellitus, the ALJ noted that, although plaintiff's diabetes was "poorly controlled" due to lack of compliance with the treatment prescribed, the record still did not reflect that plaintiff experienced any complications related to diabetes (*i.e.*, disabling retinopathy, neuropathy, end organ damage) that would limit plaintiff in ways beyond the ALJ's assessed residual functional capacity. (AR 20) (citing Exhibits 2F at 4 [AR 259] ("[Plaintiff] states that she has not been taking medication corretly [sic]); 2F at 6-7 [AR 261-62] ("[plaintiff] is a noncompliant patient . . . [who] does not take care of herself."); 3F at 4 [AR 268]).

Plaintiff essentially contends that the foregoing evidence, together with her subjective symptoms,[6] demonstrates that her bilateral upper extremities are more significantly impaired (*i.e.*, she is "incapable of performing and sustaining [] frequent find and gross bilateral upper extremity manipulations) and, thus, she would "most definitely fail" at any attempt to engage in her prior employment. (Plaintiff's Motion at 10-11). This Court will not second-guess the ALJ's

---

[6]To the extent plaintiff contends that the ALJ erred by failing to account for plaintiff's testimony and other statements that she had much more significant limitations in her upper extremities (Plaintiff's Motion at 10-11), plaintiff's argument lacks merit. As discussed below, the ALJ properly discredited plaintiff's subjective complaints for clear and convincing reasons supported by substantial evidence. Accordingly, the ALJ did not err by not including such discredited limitations in his residual functional capacity assessment.

reasonable determination to the contrary, however, even if the evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the

claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his or her credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger, 464 F.3d at 972. Accordingly, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Analysis

Plaintiff suggests that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 3-12). A reversal or remand is not warranted on this basis.

First, the ALJ properly discounted the credibility of plaintiff's subjective complaints based on plaintiff's apparent lack of candor during her psychiatric consultative examination. For example, as the ALJ noted, the consultative psychiatrist found plaintiff "not entirely credible as a historian" due to plaintiff's "obvious exaggeration." (AR 18) (citing Exhibit 5F at 1 [AR 294]). The psychiatrist noted that, although plaintiff claimed to have each of the impairments the psychiatrist identified for plaintiff, when asked to provide details about the symptoms plaintiff allegedly suffered therefrom, plaintiff gave vague and/or evasive answers, or described symptoms that either were unrelated to the particular impairment the psychiatrist identified or were otherwise not severe. (AR 294-95, 299). At one point during the examination plaintiff stated that she

was "confused," but did not describe or display any symptoms of confusion that were consistent with psychiatric or even lay terminology. (AR 295, 299). In addition, plaintiff claimed to have "poor self-esteem" but did not hesitate to argue with the examining psychiatrist when the doctor indicated that some of plaintiff's symptoms were not unusual or were not severe. (AR 294, 299). Plaintiff also relayed "a lot of dramatic stories" to the examiner, and while plaintiff seemed "quite invested" in her belief that her stories reflected a "very severe" condition, the stories actually did not. (AR 299). The ALJ was entitled to conclude that plaintiff's lack of candor during the consultative examination "diminish[ed] the credibility of the [plaintiff's] subjective complaints and allegations in general." (AR 18); see, e.g., Tonapetyan, 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citations omitted); Fair, 885 F.2d at 604 n.5 ("[I]f a claimant . . . is found to have been less than candid in other aspects of [her] testimony, that may be properly taken into account in determining whether or not [her] claim of disabling pain should be believed.").

Second, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling symptoms, plaintiff stated that she had no problem managing personal care, could prepare meals on a daily or weekly basis, could do the laundry once or twice a week for up to three hours at a time, went grocery

///

shopping with her husband two or three times a month, and attended church about twice a month.  (AR 18) (citing Exhibit 4E at 2-4 [AR 182-84]).

Third, the ALJ properly considered plaintiff's failure to "seek treatment or follow a prescribed course of treatment" in assessing her credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). For example, as discussed above, although 2007 clinical testing indicated that plaintiff had bilateral carpal tunnel syndrome, a 2008 medical record noted that plaintiff had "[not been] taking anything" for her carpal tunnel pain. (AR 360). Thereafter plaintiff apparently did not seek additional treatment for her carpal tunnel syndrome for over three years. (AR 362-63). As also noted above, plaintiff's diabetes mellitus was "poorly controlled" because plaintiff failed to comply with her prescribed course of treatment. (AR 259; AR 261-62). While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), plaintiff has not presented such a sufficient reason.

Third, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's relatively conservative medical treatment. See, e.g., Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citing Bunnell, 947 F.2d at 346); see Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). For example, as the ALJ noted and as the medical evidence discussed above reflects, contrary to plaintiff's claim of disabling symptoms, the record shows that plaintiff "received only routine conservative treatment and lacked

///

1  aggressive treatment, such as surgical intervention" for most of her impairments.
2  (AR 19, 251, 340, 360-63, 371, 377-79).
3       Finally, the ALJ properly discounted plaintiff's credibility in part because
4  plaintiff's allegations of disabling symptoms were not fully corroborated by the
5  objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain
6  testimony cannot be rejected on the sole ground that it is not fully corroborated by
7  objective medical evidence, the medical evidence is still a relevant factor in
8  determining the severity of the claimant's pain and its disabling effects.") (citation
9  omitted). As the ALJ noted, and as discussed above, treatment records reflect
10 examinations of plaintiff that were generally within normal limits and/or showed
11 no significant abnormalities or functional limitations beyond those already
12 accounted for in the ALJ's residual functional capacity assessment. (AR 19-21)
13 (citing, *inter alia*, Exhibits 1F at 20 [AR 251]; 2F at 4, 6-7 [AR 259, 261-62]; 11F
14 at 4-5 [AR 340-41]; 12F at 3 [AR 344], 15F at 4, 10-12 [AR 371, 377-79]).
15      Accordingly, plaintiff is not entitled to a reversal or remand on this basis.[7]
16 ///
17 ///
18 ///
19 ///

---

[7] To the extent plaintiff suggests that the ALJ failed to provide sufficient reasons for rejecting the lay statements provided by plaintiff's husband (Plaintiff's Motion a 6-7, 10-11), plaintiff's suggestion lacks merit. Plaintiff's husband's statements in two third-party function reports regarding plaintiff's abilities were essentially the same as plaintiff's statements in her own function reports. (Compare AR 181-88 [plaintiff's 12/10/10 function report] and AR 215-22 [plaintiff's 6/18/11 function report] with AR 173-80 [plaintiff's husband's 12/8/10 function report] and AR 207-14 [plaintiff's husband's 6/18/11 function report]). Since, as discussed above, the ALJ provided clear and convincing reasons for rejecting plaintiff's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting plaintiff's husband's similar statements. See Valentine v. Commissioner of Social Security Administration, 574 F.3d 685, 693-94 (9th Cir. 2009) (ALJ properly discounted wife's testimony for same reasons used to discredit claimant's complaints which were similar).

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 28, 2014

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE